UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| B.S., by and through his Parents and Natural Guardians, K.S. and M.S., ) ) ) ) Plaintiffs, ) ) v. ) ) ANOKA HENNEPIN PUBLIC SCHOOLS, ISD No. 11, TOM HEIDEMANN, Chair of Anoka Hennepin Board of Education, MINNESOTA DEPARTMENT OF EDUCATION, BRENDA CASSELLIUS, Commissioner, in her individual and representative capacity, OFFICE OF ADMINISTRATIVE HEARINGS, TAMMY PUST, Chief Administrative Law Judge in her individual and representative capacity, ) ) ) ) ) ) ) ) ) ) ) ) Defendants. ) ) | Civil File No.<br><br>**VERIFIED COMPLAINT AND APPEAL OF ADMINISTRATIVE DECISION**<br><br><br><br><br><br><br>**JURY TRIAL REQUESTED** |

_____

For their Complaint, Plaintiffs B.S. ("Branden"), and his parents and natural guardians, K.S. ("Mr Saari") and M.S. ("Mrs Saari")(collectively "Plaintiffs") state as follows:

## I. INTRODUCTION

1.     The Plaintiffs requested a special education administrative hearing on behalf of their disabled son against Anoka Hennepin Public Schools to remedy inadequate and incomplete special education services.  The Administrative Law Judge ("ALJ") assigned to the hearing imposed a nine hour limitation on the presentation of the Plaintiffs' case.  The imposition of time limits was arbitrary and capricious.  It prejudiced the Plaintiffs as follows: 1) Plaintiffs bear the burden of proof in special education hearing; 2) Plaintiffs were not permitted to testify; 3)

1

Plaintiffs were not permitted to introduce their exhibits; 4) Plaintiffs were not permitted to cross examine opposing party witnesses; and 5) Plaintiffs were denied a formal offer of proof. As a result, the Plaintiffs right to due process consistent with state and federal law was infringed.

2.        The time limitation was jointly created, and continues to be imposed, by the Minnesota Department of Education ("MDE") and the Office of Administrative Hearings ("OAH"). The time lines established are without any objective factual or legal basis.

3.        The Plaintiffs are seeking declaratory and injunctive relief, reversal of the administrative order, and a remand for a full administrative hearing consistent with state and federal law and for attorneys' fees and costs.

4.        The action is brought to appeal the administrative decision and redress the rights of Plaintiff B.S. ("Branden"), on behalf of his Parents and Guardians, K.S. ("Mr Saari")and M.S. ("Mrs. Saari"), as a student with a disability the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, and its implementing regulations 34 C.F.R. Part 300, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 (Section 1983), 42 U.S.C. § 1988, the Minnesota State Constitution, and Minn. Ch.  125A, and Minn. Stat. § 125A.091, against the Anoka Hennepin Public Schools ("District"), the Minnesota Department of Education ("MDE"), Brenda Cassellius ("Commissioner") (collectively "MDE Defendants"), the Office of Administrative Hearings ("OAH") and Tammy Pust ("Pust")(collectively "OAH Defendants").

## II.        JURISDICTION

5.        Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Individuals with Disabilities Education Act, and Fourteenth Amendment to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 1367, the Minnesota State Constitution and

Minnesota special education laws. This Court has original jurisdiction over Counts 1 through 3, and supplemental jurisdiction over Counts 4 and 5.

6.       Venue in this District is authorized by 28 U.S.C. § 1391(b) because the Defendants conduct business or reside in this District, and because this District is where a substantial part of the events or omissions giving rise to the claim occurred.

## III.  PARTIES

7.       Branden is a sixteen year-old male born on the 13th of April 1997. He is a resident of Anoka Hennepin Public Schools. He resides with his parents, K.S. and M.S. at 15128 Tonto Street NW Ramsey, Minnesota 55303. Branden and his parents are residents of the Anoka-Hennepin Public Schools in Anoka, Minnesota.

8.       Mr and Mrs Saari are the natural parents and guardians of Branden.

9.       Independent School District 11, Anoka Hennepin Public Schools is a political subdivision of the State of Minnesota with its principal place of business at 2727 North Ferry Street, Anoka, Minnesota 55303.

10.      The Minnesota Department of Education ("MDE") is a political subdivision of the State of Minnesota with its principal place of business at 1500 Highway 36 West, Roseville, Minnesota. The MDE is the State agency responsible for ensuring that due process protections and statutorily protected property interests are provided to students with disabilities consistent with the state and federal statute. The MDE contracts with the Office of Administrative Hearings to provide children with disabilities their due process protections including the right to a hearing under the Act.

11.      Brenda Cassellius ("Cassellius") is a party in her individual and official capacity as the Commissioner of the MDE. Cassellius, on information and belief, acted as an agent of the

MDE at all times relevant times and under the color of state law.  On information and belief, Cassellius is a resident of the State of Minnesota.  Cassellius was responsible, in part or in whole, for violating Branden's IDEA and Fourteenth Amendment rights by creating, endorsing and enforcing in conjunction and cooperation with the OAH the arbitrary time limits for special education administrative hearings.

12.      The Office of Administrative Hearings ("OAH") is a political subdivision of the State of Minnesota with its principal place of business at 600 North Robert Street, Saint Paul, Minnesota 55101.  The OAH is the contracted state agency responsible for ensuring that due process protections and statutorily protected property interests are provided to students with disabilities consistent with the state and federal statute.  The OAH contracts with the MDE to provide children with disabilities their due process protections including the right to a hearing under the Act.

13.      Tammy Pust ("Pust") is a party in her individual and official capacity as the Chief Administrative Law Judge with the Office of Administrative Hearings ("OAH").  Pust, on information and belief, acted as an agent of the OAH at all times relevant times and under the color of state law.  On information and belief, Pust is a resident of the State of Minnesota.  Pust was responsible, in part or in whole, for violating Branden's IDEA and Fourteenth Amendment rights by creating, endorsing and enforcing in conjunction and cooperation with the MDE Defendants the arbitrary time limits for special education administrative hearings.

### III.  FACTS

14.      Branden began attending Anoka High School ("AHS") as a ninth grader in the Fall of 2011.  He has been at all times material herein diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and a Written Language Disorder.  He is a young man who struggles with

his education but who has been described by his teachers as "a compassionate, caring, honest and humorous young man." He wants to join the Marines and attend college. Because of his disabling condition and the lack of effective special education services, Branden does not have the credits necessary to graduate with his same-age peers, lacks the necessary organizational, task completion and written language skills to be academically successful, and has fallen behind his peers in basic standards areas of reading, writing, science and mathematics. The delays are directly attributable to his disabling condition and Anoka Hennepin's refusal to address his disability-related academic deficits.

15. He began attending AHS with an individualized education program ("IEP") with supports and services in the areas of reading, organizational skills and written language. Once he began AHS, special education and related services were reduced significantly by AHS staff. Special education services minutes were cut and areas of previously identified education need were dropped. As a result, Branden received his first failing grades in school, was unable to obtain credits necessary for graduation, did not pass district and state-wide grade level assessments, and did not develop any compensatory skills, such as keyboarding/word processing, to address his disability-related deficits.

16. The Plaintiffs, prior to bringing a Complaint and Request for an Administrative Hearing ("Complaint"), wrote to the District on the 12th of December 2012 requesting specific changes to Branden's individualized education program ("IEP"). The Plaintiffs' requests were consistent with the professionals who followed and evaluated Branden over time.

17. Despite the request for changes to Branden's education program, the District made minimal changes to his IEP and added changes to his education program to which the Plaintiffs'

did not agree, i.e., pass/fail rather than letter grades.  The Plaintiffs' disagreement with the changes were set forth in writing to Anoka Hennepin.

18.     At the time the Plaintiffs made their requests in December 2012, Branden, a student of average intellectual ability, was failing in his education by every available objective measure. He received failing grades in the majority of his school work, was unable to pass the district or state-wide assessments in reading, writing, science and math, and was unable to organize and timely complete his school work with routine timelines. Branden's identified disabilities required that Anoka Hennepin accommodation his disabilities by, among other supports and services, modifying the quantity of assignments, not assigning failing grades for late assignments, and by providing direct instruction in reading, writing and organizational skills.  The purpose of direct instruction for Branden is to develop compensatory skills in his areas of identified needs.

19.     During the course of the special education administrative hearing, Anoka-Hennepin defended its services to Branden by alleging that Branden was a lazy, unmotivated student, with which the Administrative Law Judge agreed.

20.     During a pre-hearing conference held on the 14th of June 2013, the parties had a brief discussion about the number of days for the administrative hearing.  Both parties suggested one and 1/2 days for the presentation of evidence of their respective evidence.  A pre-hearing order issued setting forth 9 hours for the presentation of each parties' evidence.  No discussion was held prior to the administrative hearing regarding the implications of the nine hour limitation.

21.     Plaintiffs attorney has practiced special education law in special education administrative hearings for 23 years and at no time prior to this hearing, has the parties suggestion for hearing time limited the necessary presentation of evidence.  The ALJ in this case tips his hand regarding

his bias not only against Plaintiffs' counsel but Plaintiffs themselves by repeatedly asserting that

the Plaintiffs' presentation was "disorderly" and "disorganized."

22.     On the third day of the administrative hearing, the ALJ reminded the Plaintiffs that they

had used six hours and 50 minutes of the 9 hours allotted.  *Trans. 444*. Plaintiffs' counsel

objected to the limitation as an "artificial restriction" that "violates my client's right to due

process to the extent that they bear the burden and have the right to present evidence relevant to

these proceedings."  *Trans. 445-46*.  Plaintiffs' counsel sought clarification of the nine hour

limitation as follows:

| | |
|---|---|
| Kane: | So I just want to understand this, so if I am in mid-witness examination, you will be cutting it off? |
| ALJ: | With regret. |
| | |
| Kane: | Declining to accept any more? |
| ALJ: | Indeed. |

***

*Trans. 447*.

23.     The ALJ also identified, for the first time, that Plaintiffs would not be permitted to cross

examine opposing party witnesses.  Plaintiffs' counsel set forth the following in the

administrative record:

| | |
|---|---|
| Kane: | My best thinking is that at this point we would convene the administrative hearing at this time, have your limitations on the time related to presentation of the issues certified for appeal, let us go to the Court of Appeals and find out whether they determine that this is actually lawful under the circumstances and meets my client's rights to a fair administrative hearing. |

*Trans. 448-49*.

24.     Plaintiffs' counsel objected as follows:

Kane:   I have to look at the certification issues. Let me look at the interlocutory appeal standard. Let me explain to you my position here on this and having a brief discussion with a Constitutional attorney on our break, my client has a Constitutional right to due process under these proceedings. There are no statutory authorized time limits to the administrative hearing, and the parents are entitled to present their evidence and present cross and direct.

I realize that you issued an order indicating that nine hours would be allotted. I think that the nine hours is not reasonable, it's predicated upon a best practices that is not incorporated in law or statute. Since this is a Constitutional right to due process both under Federal statute and under the 14th Amendment, I think it's important enough that if my client is denied the opportunity to present their Complaint and the evidence to support their Complaint, then that is a violation of those interests.
Now --

*Trans. 453.*

25.     Plaintiffs' counsel referred the ALJ and District's counsel to Minnesota Rules of

Appellate Procedure, Rule 103.03 in support of their request for an interlocutory appeal. *Trans.*

*457 to  494.*

26.     Mrs Saari asked to be heard regarding the due process limitations:

ALJ:    But I endeavor to have citizens on an equal playing field with the School District and the School District on no less a place than parents and students.  What do I need to know Mrs Saari?

Saari:  I am really at a loss.  If the burden of proof is on our side, we had to count on the District for a lot of documentation that we aren't [privy] to.  We needed legal counsel to get to this place.

ALJ:    Sure

Saari:  We don't have the financial means to do a lot, but the one thing that we would like is for our son to be able to graduate high school with accommodations and the ability to have some semblance of dignity.  I know this is not necessarily a Constitutional right.  I don't know, maybe it is.

ALJ:    It's important.  It is important.

Saari:   But until Ms Kane became part of what we did, we weren't even paid attention to.  And I am sorry, what do we do, go home and tell our son, you know what, this learning experience that mom and dad have been telling you about is a complete sham.

*Trans. 469.*

27.     During course of these exchanges, the ALJ complaints with Plaintiffs' counsel presentation of evidence began to evolve:

ALJ:    I think you are a very able counsel, Ms Kane.  I think this case, your case in chief could have been presented in a *crisper* fashion.

*Trans. 477* (emphasis added).

28.     The ALJ's request for *crispness* evolved into repeated allegations by the ALJ on the record and in the final order that the Plaintiffs' counsel's presentation of evidence was "disorganized" and "disorderly."

29.     ALJ characterized the District's counsel's presentation of evidence as follows:

The hearing record similarly makes clear that Counsel for the District understood the limitations in the Second Pre-hearing Order.  He used the examination time apportioned to his client sparingly and tightly focused his questioning of witnesses on the elements of the District's defense.

*Order*, p. 11, ¶ 55.

30.     The ALJ did not point out the District's counsel was unhampered by the Plaintiffs'  cross examination of the District's witnesses because the Plaintiffs' nine hour time limit had lapsed.

31.     The ALJ issued a final decision on the 20th of September 2013. *Attachment A*.  The decision was in the District's favor.  The decision itself is being appealed in its entirety.

**MDE/OAH Policies and Procedures of General Applicability**

32.    Plaintiffs made Minnesota Government Data Practices requests sent to both the MDE and OAH regarding the "best practices" due process limitations.  Both the MDE and OAH responded to the requests.

33.    The document internal to the MDE and OAH reflect that the two state agencies and their employees worked together and in cooperation to create a set of "best practices" for special education administrative hearings.  Seven best practices were identified and agreed upon between the MDE and OAH.

34.    The cooperative relationship regarding the best practices began on the 21st of September 2011 between Barbara Case ("Case"), Supervisor of the MDE's Special Education Division, and Eric L. Lipman ("Lipman"), Assistant Chief Administrative Law Judge.[1]

35.    Lipman, on behalf of the OAH, reflected the following position:

> While the practice on the length of due process hearings varies considerably from state to state, to my mind suggests that the states have some discretion to make needful rules in this area – and that this would not offend federal education officials by doing so.

*Attachment B*.

36.    ALJ Lipman proposed the following limitations:

> Each party to a due process hearing would be permitted no more than 6 hours of hearing time for direct examination of that party's witnesses and cross-examination of an opposing's party's witnesses.

*Id*.

---

[1]    The proposed time limits resulted from the administrative hearing captioned *In the Matter of TLM v. Minnetonka Public Schools*, OAH File No. 15-1300-21798-9; MDE File No. 11-013H.  The administrative hearing lasted 11 days over the repeated objections of plaintiffs' counsel, Margaret O'Sullivan Kane.  The bill from the ALJ to the MDE was approximately $50,000.00.

37.     At the time the six hour limitations was proposed by ALJ Lipman, also recommended an "agency bill" adopting this limitation in state statute.  *Id*.  No rulemaking was initiated regarding the best practices recommendations by either the MDE or OAH Defendants.

38.     By January 2012, the MDE and OAH developed and discussed time limitations on all special education administrative hearings through "best practices" recommendations.

39.     On the 2nd of February 2012, the proposed "best practices" were provided to legal counsel engaged in special education administrative hearing practice.  Chief Judge Raymond Krause characterized the "best practices" as "[t]hese practices represent the expectations of the Minnesota Department of Education (MDE) has for practices in order to align Minnesota practice more closely with State and Federal statute and rule."

40.     No such "State or Federal statute and rule" exists or have been identified by any of the Defendants.

41.     The MDE created seven "suggested best practices."  Those practices include requirements that the statutory timelines be followed absent some rare exception, and limit the number of ALJs assigned to the cases and increase and intensify the training for those ALJs.  The MDE and OAH Defendants created the best practices time limits to apply to all special education administrative hearing held in the state of Minnesota under state and federal law.  The best practice now govern the MDE and OAH Defendants' enforcement of the Plaintiffs and other students with disabilities rights under the state and federal law.

42.     In response to the MDE's "suggested best practices" neither the MDE nor the OAH developed or designed "best practices" associated with the other six identified best practices.  In the instant case, and others, the administrative decisions were not provided within 75 day timeline identified in state and federal statute, as well as the best practices, and extensions to the

state and federal timelines are routinely granted without good cause.  The MDE and OAH

confirmed in writing that the remaining six best practices had not been addressed by either the

MDE or the OAH.

43.     In another special education administrative hearing, ALJ Lipman granted both sides

18 hours for the presentation of their evidence because both parties had expert testimony to

present.  To this limitation that represents a doubling of the time granted to the Plaintiffs, the

Student and District jointly objected (MDE File No. 13-028H; OAH File No. 8-1300-30720;

*School District and Parents' Argument Against Imposition of the MDE's Arbitrary Timelines for*

*Hearing*).  ALJ Lipman asserted in the Order responsive to the joint objection that "because

complex cases involve the interplay between many 'facts of consequence," they require sturdier

controls than simple cases."  (MDE File No. 13-028H; OAH File No. 8-1300-30720; *Fourth Pre-*

*hearing Order*). This assertion belies the significant controls imposed by ALJ Lipman on the

Plaintiffs based upon an unknown and unidentified assessment of the Plaintiffs' case a simple.

44.     There is no right to discovery in special education cases and the Supreme Court of the

United States has denied parents and students the right to recoup expert witness fees, thus,

parents of modest means must convert, through cross examination, the opposing parties

witnesses or pay out-of-pocket expert fees and costs that range from $5,000.00 - $10,000.00.

This requires effort, knowledge and skill to educate administrative law judges by using the

expertise and knowledge of the opposing parties' witnesses.

# V.  Claims

## Count One

### Individuals with Disabilities Education Act
### 20 U.S.C. § 1415 &
### State Special Education Law, Minn. Stat. § 125A.091.

45.     The Plaintiffs incorporate by reference paragraphs 1 - 44, as well as the Introduction as if fully set forth herein.

46.     The Plaintiffs were denied access to the special education administrative hearing pursuant to the IDEA, 20 U.S.C. § 1415 and Minn. Stat. § 125A.091 and were deprived of the opportunity to exhaust administrative remedies.

47.     MDE and OAH Defendants have adopted a policy and procedure of general applicability of denying due process to Plaintiffs and other eligible students with disabilities.

48.     The Individuals with Disabilities Education Act procedural due process requirements include the right to an administrative hearing:

> (6) An opportunity for any party to present a complaint—

>> (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and

>> (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this part, in such time as the State law . . .

20 U.S.C. §1415(b)[2].

49.     Minnesota statute provides a procedural due process safeguard requirement:

> (a) A parent or a school district may file a written request for a due process hearing regarding a proposal or refusal to initiate or change that child's evaluation, individualized

---

[2]   The federal implementing regulations mirrors the language of the Act. See 34 C.F.R. §§ 500 - 515.

education program, or educational placement, or to provide a free appropriate public education.

Minn. Stat. § 125A.091, subd. 14

50.     Plaintiffs appeal the administrative decision in its entirety on the grounds of legal and factual error.

**COUNT TWO**

**VIOLATIONS UNDER THE FOURTEENTH AMENDMENT
& SECTION 1983
(DENIAL OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS
- AGAINST ALL DEFENDANTS)**

51.     The Plaintiff incorporates paragraphs 1 through 43 as though fully set forth herein.

52.     Plaintiffs, as a student with a disability and the parents of a student with a disability entitled to the procedural protections and due process under the IDEA have acquired, as citizens of the United States, a property and liberty interest in the protections free from arbitrary and capricious interference by the MDE and OAH, including the individually named defendants and persons acting under their direction and control.  The Plaintiffs also invested a significant amount in retaining counsel to protect those interests, thus strengthening the aforementioned interests.

53.     Defendants arbitrarily and capriciously denied Plaintiffs their procedural due process protection of a full and fair administrative hearing on the merits of their claims under the IDEA as set forth herein.

54.     Defendants created a rule of general application for special education administrative hearings that adversely affects the rights of children with disabilities in the state of Minnesota to receive a full and fair hearing without pursing the requisite process for adoption of new agency rules under state law.

55.     In committing the acts set forth in the Complaint, Cassellius and Pust were using the authority granted to them as Commissioner of the Minnesota Department of Education and Chief Administrative Law Judge of the Office of Administrative Hearings.

56.     The official acts of the MDE and OAH must be deemed state action and under the color of state law because the agencies are public institutions.

57.     Any other officials named herein are officials of MDE and/or OAH and participating in the arbitrary and capricious denial of due process using the authority granted to them in their official capacities as employees and/or officers of the MDE and/or OAH, and their actions likewise must be considered state action under the color of state law.

58.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiffs to extensive humiliation, degradation, emotional distress, mental anguish, physical discomfort and loss of their property and liberty interest in their son's education.

59.     As a result of the deprivations of Plaintiffs' rights under the United States State Constitution, they sue for damages.

## COUNT THREE

### VIOLATIONS UNDER THE FOURTEENTH AMENDMENT & SECTION 1983 (PERSONAL LIABILITY FOR DENIAL OF DUE PROCESS)

60.     The Plaintiff incorporates paragraphs 1 through 59 as though fully set forth herein.

61.     Defendants Cassellius and Pust knew or should have known that their actions in the conduct of denying the Plaintiffs the opportunity to a full and fair special education administrative hearing denied the Plaintiffs their constitutional right to substantive and procedural due process under the law and therefore exceeded their authority granted to them in

their official capacities as representatives of the MDE and OAH, respectively. Thus, they are personally liable for damaged incurred by the Plaintiffs.

62.     Plaintiffs, as a student with a disability and the parents of a student with a disability, are entitled to the procedural protections and due process under the IDEA have acquired, as citizens of the United States, a property and liberty interest in those protections free from arbitrary and capricious interference by the MDE and OAH, including the individually named defendants. The Plaintiffs also invested a significant amount in retaining counsel to protect those interests, thus strengthening the aforementioned interests.

63.     Defendants Cassellius and Pust's acts have caused the Plaintiffs to suffer damages in emotional distress, humiliation, anxiety, and loss of educational opportunities which have caused the Plaintiffs to suffer damages in an amount to be determined at trial.

64.     The illegal and reversible error of placing arbitrary and capricious time constraints on the presentation of Plaintiffs' case in a special education administrative hearing has adversely affected Branden's ability to be remediated in areas of identified education needs thus disrupting his long term plan and goal of graduating with his same age peers with the requisite compensatory skills to continue his education.

65.     Defendants created a rule of general application for special education administrative hearings that adversely affects the rights of children with disabilities in the state of Minnesota to receive a full and fair hearing without pursing the requisite process for adoption of new agency rules under state law.

66.     In committing the acts set forth in the Complaint, Cassellius and Pust were using the authority granted to them as Commissioner of the Minnesota Department of Education and Chief Administrative Law Judge of the Office of Administrative Hearings.

67.     The official acts of the MDE and OAH must be deemed state action and under the color of state law because the agencies are public institutions.

68.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiffs to extensive humiliation, degradation, emotional distress, mental anguish, physical discomfort, monetary loss, and loss of their property and liberty interest in their son's education.

69.     As a result of the deprivations of Plaintiffs' rights under the United States Constitution, they sue for damages.

**COUNT FOUR**

**VIOLATIONS UNDER THE MINNESOTA STATE CONSTITUTION
& SECTION 1983
(DENIAL OF DUE PROCESS - ALL DEFENDANTS)**

70.     The Plaintiff incorporates paragraphs 1 through 69 as though fully set forth herein.

71.     The MDE and OAH Defendants acted with intent to violate Plaintiffs' constitutional rights, their unlawful acts were outrageous, were engaged in willfully, recklessly, in bad faith, and with reckless indifference to Plaintiffs' constitutional rights.

72.     The MDE and OAH Defendants, while acting under the color of state law, intentionally and deliberately deprived Plaintiffs of their civil rights to due process.  As a direct and proximate result thereof, Plaintiffs were injured and damaged.

73.     The MDE and OAH Defendants while acting under the color of state law, intentionally and deliberately deprived Plaintiffs' of their civil rights guaranteed by the Minnesota State Constitution, Minn. Const. art. I, § 7, by violating the Plaintiffs' right to due process under state and federal law.  As a direct and proximate result thereof, Plaintiffs were injured and damaged.

74.     Plaintiffs, as a student with a disability and the parents of a student with a disability, are entitled to the procedural protections and due process under the IDEA have acquired, as citizens

of the United States, a property and liberty interest in those protections free from arbitrary and

capricious interference by the MDE and OAH, including the individually named defendants.

75.     The Plaintiffs also invested a significant amount in retaining counsel to protect those

interests, thus strengthening the aforementioned interests.

76.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to

subject the Plaintiffs to extensive humiliation, degradation, emotional distress, mental anguish,

physical discomfort, monetary loss and loss of their property and liberty interest in their son's

education.

77.     As a result of the deprivations of Plaintiffs' rights under the Minnesota State

Constitution, they sue for damages.


### COUNT SIX

#### VIOLATIONS UNDER THE MINNESOTA STATUTE CH. 14.
#### (IMPROPER RULEMAKING)

78.     The Plaintiff incorporates paragraphs 1 through 77 as though fully set forth herein.

79.     Pursuant to Minn. Stat. Ch. 14, the Administrative Procedures Act, MDE and OAH

Defendants have statutory authority to amend, adopt, or repeal the agency rules and must follow

the procedures designated in Minn. Stat. §§ 14.001 to 14.69.  Minn. Stat. §14.05.

80.     The procedures require 1) a public review of the agency's statement of need for and

reasonableness of the rule; and 2) the opportunity for a public hearing on the proposed rules.

81.     The time limits placed on the presentation of evidence of parties to any special education

administrative hearing is "rulemaking" within the statute.

82.     At no time did the MDE and OAH Defendants conform their conduct to Administrative

Procedures Act.

83.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiffs to extensive humiliation, degradation, emotional distress, mental anguish, physical discomfort, monetary loss and loss of their property and liberty interest in their son's education.

84.     As a result of the deprivations of Plaintiffs' rights under the Minnesota Administrative Procedures Act, they sue for damages.

## VI.  RELIEF

**THEREFORE,**  Plaintiffs respectfully request that this court:

1.      Exercise jurisdiction over this cause of action;

2.      Declare that Plaintiffs have a constitutionally protected property and liberty interest in Branden's education and is entitled to full and fair due process under the Act;

3.      Declare that Plaintiffs' property interest in his education which was taken from him by the MDE and OAH Defendants without due process of law;

4.      Declare the Defendants policies and practices of imposing time limits on the Plaintiffs as arbitrary and capricious and, therefore, reversible error.

5.      Declare the Defendants policies and practice of imposing time limits on the Plaintiffs was agency rulemaking without the requisite rulemaking procedures and is, therefore, reversible error.

6.      Issue a Preliminary Injunction requiring Defendants to cease the practice of imposing arbitrary and capricious without undertaking rulemaking procedures time limits on the presentation of evidence in special education administrative hearings provide Plaintiffs with their due process as required under state and federal law;

7.      Award compensatory damages against all Defendants, including costs and attorneys' fees as appropriate, for all counts alleged above; and

8.      Provide such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**KANE EDUCATION LAW, LLC.**

Dated: 22 November 2013        /s/ Margaret O'Sullivan Kane
                                   Margaret O'Sullivan Kane /ID # 220243
                                   Attorney for Plaintiffs
                                   1032 Grand Avenue
                                   Suite 202
                                   Saint Paul, Minnesota 55105
                                   651/222-8611

### VERIFICATION

       I verify that I have read the foregoing Complaint, and that all of the facts and statements made therein are true and correct to the best of my knowledge, and as to those facts stated on information and belief, I also believe them to be true and correct.

Dated:_____        _____
                                               Mary Saari

Subscribed and sworn to before me
this _____ day of November 2013.

_____
Notary Public