UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| B.S., by and through his Parents and Natural Guardians, K.S. and M.S., <br><br> Plaintiffs, <br><br> v. <br><br> ANOKA HENNEPIN PUBLIC SCHOOLS, ISD No. 11, TOM HEIDEMANN, Chair of Anoka Hennepin Board of Education, MINNESOTA DEPARTMENT OF EDUCATION, BRENDA CASSELLIUS, Commissioner, in her individual and representative capacity, OFFICE OF ADMINISTRATIVE HEARINGS, TAMMY PUST, Chief Administrative Law Judge in her individual and representative capacity, <br><br> Defendants. | Civil File No. 13-3220 (ADM/JJK) <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MDE/OAH MOTION FOR DISMISSAL** <br><br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL REQUESTED** |

## INTRODUCTION

Minnesota Department of Education ("MDE") and Brenda Cassellius ("Cassellius") (collectively "MDE Defendants") and the Office of Administrative Hearings ("OAH") and Tammy Pust ("Pust") (collectively "OAH Defendants") assert and argue through the Motion to Dismiss that under no conceivable circumstances can state agencies and its officers ever be held liable for actions taken within the scope of their official duties no matter the constitutional or federal statutory violations. Nothing could be further from the truth as the United States Supreme Court has repeatedly attempted to illuminate.

1

The MDE and OAH Defendants incorrectly assert that they are shielded from liability under the IDEA on the following premises: 1) they were not a party to the administrative proceeding; and 2) actions against state agencies under the IDEA are barred by Eleventh Amendment immunity. MDE and OAH Defendants also assert that Plaintiffs failed to allege any personal conduct on the part of Defendants Cassellius and Pust in their individual capacities. Finally, MDE and OAH Defendants assert that there is no jurisdiction with this Court in the pendant state claims involving violations of the Minnesota State Constitution and Chapter 14 rulemaking mandates for state agencies.

Plaintiffs assert that the arguments by the MDE and OAH Defendants are contrary to the clear language in the state and federal statutes, the United States Constitution and Minnesota Constitution.

Plaintiffs incorporate by reference the arguments presented in their Motion for Summary Judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts

alleged is improbable, and 'that a recovery is very remote and unlikely.' " *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

A complaint states a plausible claim for relief if its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Several principles guide us in determining whether a complaint meets this standard. First, the court must take the plaintiff's factual allegations as true. *Id.* at 1949–50. This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action"; such allegations may properly be set aside. *Id.* (*quoting Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. *Id.* (*quoting Twombly,* 550 U.S. at 557, 127 S.Ct. 1955;) *see also Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009); *Branden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009).

Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible. *See Vila v. Inter–Am. Inv. Corp.,* 570 F.3d 274, 285 (D.C.Cir.2009) (factual allegations should be "viewed in their totality"); *cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("The inquiry [under the Private Securities Litigation Reform Act] is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."). Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.

To that end, this Court must examine each claim alleged against the MDE and OAH Defendants taking the Complaint as a whole and based on allegations within the Plaintiffs' Complaint to determine whether those claims have been properly pleaded and are supported by factual allegations within the Complaint.

## UNDISPUTED FACTS

The Plaintiffs, prior to bringing a Complaint and Request for an Administrative Hearing ("Complaint"), wrote to the District on the 12th of December 2012 requesting specific changes to B.S. individualized education program ("IEP"). The Plaintiffs' requests were consistent with the professionals who followed and evaluated B.S. over time but were not agreed upon between the Plaintiffs and AHPS. *Verified Complaint at p 5, ¶ 16.*

On the 22nd of May 2013, Plaintiffs filed a Complaint and Request for an Administrative Hearing with the Minnesota Department of Education. *Certified Inventory ("C.I."), Record Index No. 17, appended to Affidavit of Margaret O'Sullivan Kane.*

During a pre-hearing conference held on the 14th of June 2013, the parties had a brief discussion about the number of days for the administrative hearing. Both parties suggested one and 1/2 days for the presentation of evidence of their respective evidence. A pre-hearing order issued setting forth 9 hours for the presentation of each parties' evidence. No discussion was held prior to the administrative hearing regarding the implications of the nine hour limitation. At no time prior to the administrative hearing did the administrative law judge ("ALJ") state that the 9 hour limitation was all the time that would be provided to each party. At no time prior to the hearing did the ALJ state that the presentation of evidence would be cut off after the nine hour limit. At no time prior to the hearing did the ALJ identify that the 9 hour limitation included the parties' ability to cross examine adverse witnesses. *Verified Complaint at 6., ¶ 20.*

On the second day of the administrative hearing, the ALJ reminded the Plaintiffs that they had used six hours and 50 minutes of the 9 hours allotted. *C.I., Transcript Record, Trans. 444, appended to Affidavit of Margaret O'Sullivan Kane.* Plaintiffs' counsel objected to the limitation as an "artificial restriction" that "violates my client's right to due process to the extent that they bear the burden and have the right to present evidence relevant to these proceedings." *Id. at Trans. 445-46.* Plaintiffs' counsel sought clarification of the nine hour limitation as follows:

| | |
|---|---|
| Kane: | So I just want to understand this, so if I am in mid-witness examination, you will be cutting it off? |
| ALJ: | With regret. |
| | |
| Kane: | Declining to accept any more? |
| ALJ: | Indeed. |

\*\*\*

*Id. at Trans. 447*; *Verified Complaint at 7, ¶ 22.*

The ALJ identified, for the first time, at the end of the second day of the hearing that the 9 hour time limits applied to cross examination and Plaintiffs would not be permitted to cross examine opposing party witnesses. Plaintiffs' counsel set forth the following in the administrative record:

| | |
|---|---|
| Kane: | My best thinking is that at this point we would convene the administrative hearing at this time, have your limitations on the time related to presentation of the issues certified for appeal, let us go to the Court of Appeals and find out whether they determine that this is actually lawful under the circumstances and meets my client's rights to a fair administrative hearing. |

*C.I. Transcript Record, Trans. 448-49*; *Verified Complaint at 7, ¶ 23.*

Plaintiffs' counsel timely objected as follows:

Kane: I have to look at the certification issues. Let me look at the interlocutory appeal standard. Let me explain to you my position here on this and having a brief discussion with a Constitutional attorney on our break, my client has a Constitutional right to due process under these proceedings. There are no statutory authorized time limits to the administrative hearing, and the parents are entitled to present their evidence and present cross and direct.

I realize that you issued an order indicating that nine hours would be allotted. I think that the nine hours is not reasonable, it's predicated upon a best practices that is not incorporated in law or statute. Since this is a Constitutional right to due process both under Federal statute and under the 14th Amendment, I think it's important enough that if my client is denied the opportunity to present their Complaint and the evidence to support their Complaint, then that is a violation of those interests.
Now --

*Id. at Trans. 453. Verified Complaint at 7, ¶ 24.*

The time limits denied the Plaintiffs cross examination of AHPS's witnesses. Plaintiffs were denied the opportunity to testify or present evidence probative and relevant to the claims before the ALJ. ALJ did not point out the District's counsel was unhampered by the Plaintiffs' cross examination of the District's witnesses because the Plaintiffs' nine hour time limit had lapsed. *Verified Complaint at 9, ¶ 30.*

The Plaintiffs asked the ALJ to make a formal offer of proof. The request was denied. Instead, Plaintiffs made an informal offer of proof on the administrative record. *Certified Inventory, Transcript Index No. 7.*

The ALJ issued a final decision on the 20th of September 2013. The decision was in the District's favor. The decision itself was appealed in its entirety. *Verified Complaint at 9, ¶ 31.*

Plaintiffs made Minnesota Government Data Practices requests sent to both the MDE and OAH regarding the "best practices" due process limitations. Both the MDE and OAH responded to the requests. *Verified Complaint at 10, ¶ 32.*

The documents internal to the MDE and OAH reflect that the two state agencies and their employees worked together and in cooperation to create a set of "best practices" for special education administrative hearings without consideration to the statutorily protected right to a full administrative hearing. Seven best practices were identified and agreed upon between the MDE and OAH. *Verified Complaint at 10, ¶ 33*. However, the MDE and OAH documents that the only "best practice" that was developed and implemented was that practice that infringed the right of parents and students to a full administrative hearing. *Verified Complaint, Attachment B*.

The cooperative relationship regarding the best practices began on the 21st of September 2011 between Barbara Case ("Case"), Supervisor of the MDE's Special Education Division, and Eric L. Lipman ("Lipman"), Assistant Chief Administrative Law Judge.[1] *Verified Complaint at 11, ¶ 34*.

ALJ Eric Lipman stated the OAH's position:

While the practice on the length of due process hearings varies considerably from state to state, to my mind suggests that the states have some discretion to make needful rules in this area – and that this would not offend federal education officials by doing so.

*Verified Complaint at 10, ¶ 35, Attachment B*.

ALJ Lipman proposed to the OAH and MDE the following limitations:

Each party to a due process hearing would be permitted no more than 6 hours of hearing time for direct examination of that party's witnesses and cross-examination of an opposing party's witnesses. *Id at ¶ 36*. At the time the six hour limitations was proposed by ALJ Lipman, also recommended an "agency bill" adopting this limitation in state statute. *Id*. No rulemaking

---

[1] The proposed time limits resulted from the administrative hearing captioned *In the Matter of TLM v. Minnetonka Public Schools*, OAH File No. 15-1300-21798-9; MDE File No. 11-013H. The administrative hearing lasted 11 *days over the repeated objections of plaintiffs' counsel as to the extraordinary length of the hearing*, Margaret O'Sullivan Kane. The bill from the ALJ to the MDE for the administrative law judge's time in hearing was a shocking approximate amount of $50,000.00.

7

was initiated regarding the best practices recommendations by either the MDE or OAH Defendants. *Id. at ¶ 37*.

By January 2012, the MDE and OAH developed and discussed time limitations on all special education administrative hearings through "best practices" recommendations. *Id at ¶ 38*.

On the 2nd of February 2012, the proposed "best practices" were provided to legal counsel engaged in special education administrative hearing practice. Chief Judge Raymond Krause characterized the "best practices" as "[t]hese practices represent the expectations of the Minnesota Department of Education (MDE) has for practices in order to align Minnesota practice more closely with State and Federal statute and rule." *Id at ¶ 39*. However, no such "State or Federal statute and rule" exists or has been identified by any of the OAH and MDE Defendants. *Verified Complaint at 11, ¶ 40*.

The MDE created seven "suggested best practices." Those practices include requirements that the statutory timelines be followed absent some rare exception, and limit the number of ALJs assigned to the cases and increase and intensify the training for those ALJs. The MDE and OAH Defendants created the best practices time limits to apply to all special education administrative hearing held in the state of Minnesota under state and federal law. The best practice now govern the MDE and OAH Defendants' enforcement of the Plaintiffs and other students with disabilities rights under the state and federal law. *Verified Complaint at 11, 41, Attachment B*.

In response to the MDE's "suggested best practices" neither the MDE nor the OAH developed or designed "best practices" associated with the other six identified best practices. In the instant case, and others, the administrative decisions were not provided within 75 day

timeline identified in state and federal statute,[2] as well as the best practices, and extensions to the state and federal timelines are routinely granted without good cause. The MDE and OAH confirmed in writing that the remaining six best practices had not been addressed by either the MDE or the OAH. *Verified Complaint at 11, ¶ 42*.

In another special education administrative hearing, ALJ Lipman granted both sides 18 hours for the presentation of their evidence because both parties had expert testimony to present. To this limitation that represents a doubling of the time granted to the Plaintiffs, the Student and District jointly objected (MDE File No. 13-028H; OAH File No. 8-1300-30720; *School District and Parents' Argument Against Imposition of the MDE's Arbitrary Timelines for Hearing*). ALJ Lipman asserted in the Order responsive to the joint objection that "because complex cases involve the interplay between many 'facts of consequence,'" they require sturdier controls than simple cases." (MDE File No. 13-028H; OAH File No. 8-1300-30720; *Fourth Pre-hearing Order*). This assertion belies the significant controls imposed by ALJ Lipman on the Plaintiffs based upon an unknown and unidentified assessment of the Plaintiffs' case as simple. *Verified Complaint at 12, ¶ 42*.

I. **BOTH AGENCIES AND STATE OFFICIALS ARE PROPER PARTIES UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT.**

MDE and OAH Defendants incorrectly assert that because state agencies are not a proper party to a due process administrative hearing, they cannot be parties to an administrative decision on appeal. *MDE and OAH Brief at 7* ("Brief"). By arguing this position, Defendants misapprehend the claim under the Individuals with Disabilities Education Act ("Act") that is before the Court. The Defendants are correct that the Plaintiffs appealed the administrative decision and that is a part of Count One but the argument disregards the stand alone claim

---

[2] 20 U.S.C. §1415(f)(1).

against the Defendants under the Act, separate and apart from the appeal of the decision. The Court will note that in each of the Defendants arguments, the Defendants cite authority for the proposition that they are not proper parties to an appeal of the administrative decision rather than address the real claim of liability under the Act for the creation and implementation of policies and procedures that are a separate violation against the state agencies that created and implemented the violative policies and procedures under the Act.

As Count One specifically sets forth:

The Plaintiffs were denied access to the special education administrative hearing pursuant to the IDEA, 20 U.S.C. § 1415 and Minn. Stat. § 125A.091 and were deprived of the opportunity to exhaust administrative remedies.

MDE and OAH Defendants have adopted a policy and procedure of general applicability of denying due process to Plaintiffs and other eligible students with disabilities.

*Complaint at p. 13, ¶¶ 46-47*. The allegations that MDE and OAH Defendants have adopted a policy and procedure that denied the Plaintiffs due process under the Act as a result of policy and procedure of general applicability adopted by the Defendants is supported by the factual averments set forth in ¶¶ 32-44 of the Complaint.

These are stand alone claims separate and distinct from the errors on appeal of the administrative, though the policies and procedures adopted by the MDE and OAH Defendants did inform the basis for Plaintiffs' appeal.

  A. **STATE DEFENDANTS ARE NOT IMMUNE FROM SUIT UNDER THE ACT**.

The Defendants in support of their assertion that they are immune from suit cite to a district court decision *Thompson v. Board of Spec. Sch. Dist. No.1*, 936 F.Supp. 644 (D.Minn. 1996) but disregard the subsequent Eighth Circuit decision in *Bradley v. Arkansas Dept. of Educ.*, 189 F.3d 745, 752 (8th Cir. 1999) that directly address the issue of 11th Amendment immunity and the Act.

10

The Individuals with Disabilities Education Act contains 11th Amendment immunity abrogation language specific to the state and its agencies:

> (a) IN GENERAL.—A State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this title.
> (b) REMEDIES.—In a suit against a State for a violation of this title, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as those remedies are available for such a violation in the suit against any public entity other than a State.

1403

The Eighth Circuit Court of Appeals in *Bradley v. Arkansas Dept. of Educ.*, 189 F.3d 745, 752 (8th Cir. 1999) correctly held, consistent with its previous decision in *Little Rock School District v. Mauney,* 183 F.3d 816 (8th Cir.1999):

> In addition to its abrogation holding, *Mauney* holds that Arkansas waived its Eleventh Amendment immunity by receiving funds appropriated under the IDEA. *See Mauney,* 183 F.3d at 831–32. The Supreme Court's recent decisions add to the Court's waiver jurisprudence, *see, e.g., College Savings,* 119 S.Ct. at 2228 (rejecting the concept of constructive waiver), but these decisions do not affect *Mauney* 's analysis of the waiver issue. Rather, the Supreme Court continues to recognize that Congress, if acting within its spending power, may condition a state's participation in a federal spending program on the state's waiving its Eleventh Amendment immunity to claims arising from that program. *See College Savings,* 119 S.Ct. at 2231; *see also Alden,* 119 S.Ct. at 2267.
>
> \* \* \*
>
> That provision, IDEA § 1415, requires states to provide certain procedures for parents who wish to challenge a state's implementation of the "free appropriate public education" standard. *See* 20 U.S.C.A. § 1415(a) (West Supp.1999). One of the procedures that must be provided is the opportunity to have IDEA decisions reviewed in federal court. *See* 20 U.S.C.A. § 1415(i)(2) (West Supp.1999) (stating that parties who are aggrieved by a decision under the IDEA may file an action in a federal district court); *see also* 20 U.S.C.A. § 1415(i)(3)(A) (West Supp.1999) (stating that "district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy"). When it enacted §§ 1403 and 1415, Congress provided a clear, unambiguous warning of its intent to condition a state's participation in the IDEA program and its receipt of federal IDEA funds on the state's waiver of its immunity from suit in federal court on claims made under the IDEA. *We therefore hold in accordance with* <u>Mauney</u> *that Arkansas waived its Eleventh Amendment immunity with respect to IDEA claims when it chose to participate in the federal spending program created by the IDEA.*

*Bradley* at 752.

Assuming that this Court does not agree with the abrogation language in the Act and as set forth in *Bradley*, the Court in *Bradley* identified an additional distinction by which state agencies could be sued in federal court:

> The Bradleys argue that, even if the ADE could not be sued in federal court, *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), allows them to seek to enjoin ADE officials, including defendant Crowley, from committing violations of federal law. We agree. *Ex parte Young* permits a private party to receive prospective injunctive relief in federal court against a state official, even if the Eleventh Amendment otherwise protects the state and its officials from being sued in federal court. *See Ex parte Young,* 209 U.S. at 155–56, 159, 166–68, 28 S.Ct. (allowing a federal court to ignore a state's Eleventh Amendment immunity and impose prospective injunctive relief on state officials to enjoin a future violation of federal law); *see also Missouri v. Jenkins,* 491 U.S. 274, 279, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (stating that a state's Eleventh Amendment immunity does not prevent "an award of attorney's fees ancillary to a grant of prospective relief" pursued under *Ex parte Young* ).

In the case before this Court, the Plaintiffs specifically seek injunctive relief against the MDE and OAH Defendants:

> Issue a Preliminary Injunction requiring Defendants to cease the practice of imposing arbitrary and capricious without undertaking rulemaking procedures time limits on the presentation of evidence in special education administrative hearings provide Plaintiffs with their due process as required under state and federal law.

*Complaint at 19.*

The Court in Bradley also found that because the state had waived its 11th Amendment immunity by accepting federal funds under the Act that waiver of immunity extended to state officials as well:

> Furthermore, even if *Ex parte Young* did not apply, the Bradleys could pursue any remedies available under the IDEA against Crowley because, when Arkansas waived its own Eleventh Amendment immunity with respect to IDEA claims, it also waived any Eleventh Amendment immunity Crowley might have had as a state official with respect to such claims. "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87

12

L.Ed.2d 114 (1985). Under *Graham,* when Arkansas waived its own Eleventh Amendment immunity from suits brought under the IDEA, the state also waived the Eleventh Amendment immunity of its officials from such suits. *See Duffy v. Riveland,* 98 F.3d 447, 452 n. 4 (9th Cir.1996). The District Court, therefore, may exercise jurisdiction over the Bradleys' IDEA claims against Crowley and may provide any relief that the IDEA authorizes.

*Bradley* at 754. Thus the same waiver of immunity applies to state official including Defendants Cassellius and Pust.

### B. STATE DEFENDANTS ARE PROPER PARTIES TO SUIT UNDER THE ACT.

First, it is well established that certain political subdivisions of a state are "persons" which can be held liable under section 1983. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

The Act explicitly requires the submission of a State Plan which sets forth in detail the policies and procedures which the State will undertake to assure a free appropriate public education for all children with disabilities. *See* 20 U.S.C. § 1412; *Rowley,* 458 U.S. at 181, 102 S.Ct. at 3037–38.

The present dispute involves section 1412(a)(6) and (11) of the Act which provides:

IN GENERAL.—A State is eligible for assistance under this part for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:

(6) PROCEDURAL SAFEGUARDS.— (A) IN GENERAL.—Children with disabilities and their parents are afforded the procedural safeguards required by section 615.

\*\*\*
(11) STATE EDUCATIONAL AGENCY RESPONSIBLE FOR GENERAL SUPERVISION.—

(A) IN GENERAL.—The State educational agency is responsible for ensuring that—
(i) the requirements of this part are met;

20 U.S.C. § 1412(a)(11). Pursuant to this section, the burden is placed directly on the State, through its state educational agencies, to supervise and ensure the procedural safeguards set forth in 1415 are provided to all eligible students with disabilities within the state.

Defendants assert that pursuant to the district court decision in *Quatroche v. East Lyme Bd of Educ.*, 604, F.Supp.2d 403, 407 (D.Conn. 2009) the state is not a proper party to a suit under the Act because a hearing officer dismissed claims on the basis of a footnote in a letter issued by the Commissioner of Education. *Brief at 13*. The case at bar is distinguished from *Quatroche* as the only claim against the state defendants was based upon a legal error rendered by the hearing officer. In this case, the claims are far more than the legal error by the ALJ. Instead, Plaintiffs base their claims against MDE and OAH Defendants on their active participation in the development and implementation of policy and procedure of general applicability that substantially infringed the Plaintiffs' procedural due process rights under a federal statute.

### C. PLAINTIFFS PROPERLY PLED INDIVIDUAL LIABILITY FOR DEFENDANTS CASSELLIUS AND PUST.

Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983; *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358 (1991).

Congress enacted § 1983 " 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.' " *Scheuer v. Rhodes,* 416 U.S. 232, 243, 94

S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974) (quoting *Monroe v. Pape, supra,* 365 U.S., at 171-172, 81 S.Ct., at 475-476). Because of that intent, the Supreme Court has held that in § 1983 actions the statutory requirement of action "under color of" state law is just as broad as the Fourteenth Amendment's "state action" requirement. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982); *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358 (1991).

Defendant Cassellius and Pust alleged that pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) the Plaintiffs claims against the individually named Defendants must fail because the "Complaint is utterly and completely devoid of any factual allegations of any specific individual conduct by either [Cassalius] or [Pust] . . ." *Brief at 16*. Defendants assert that Plaintiffs' Complaint allege action more akin to *respondeat superior* and/or "supervisory liability" claims.

The Court in *Ashcroft* set forth the following pleading requirement to survive a motion to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft* at 678.

The Court draws a parallel to the pleadings in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929,(2006) wherein the plaintiffs in that action flatly alleged that the "defendants entered into a contract, combination or conspiracy to prevent competitive

entry" and that the "defendants took a parallel course of conduct" which the Court determined was insufficient to plausibly suggest an unlawful agreement entered into by the Defendants.

In contrast, Plaintiffs Complaint provides the specific factual averments of Defendant Cassellius and Pust in coordinating to limit the federal right to due process under the Act:

> On information and belief, Cassellius is a resident of the State of Minnesota. Cassellius was responsible, in part or in whole, for violating Branden's IDEA and Fourteenth Amendment rights by creating, endorsing and enforcing in conjunction and cooperation with the OAH the arbitrary time limits for special education administrative hearings.

*Complaint* at 11.

> Pust, on information and belief, acted as an agent of the OAH at all times relevant times and under the color of state law. On information and belief, Pust is a resident of the State of Minnesota. Pust was responsible, in part or in whole, for violating Branden's IDEA and Fourteenth Amendment rights by creating, endorsing and enforcing in conjunction and cooperation with the MDE Defendants the arbitrary time limits for special education administrative hearings.

*Complaint* at 13.

In support of those allegations, Plaintiffs attached to their Complaint the document reflected in Attachment B, which the Complaint references and recites. On page 7 of Attachment B, Defendant Pust, in her position as Chief Legal and Compliance Officer for the Minnesota Department of Education wrote:

> Hearing Length. MDE expects that in all but exceptional circumstances hearings will be concluded within three six-hour days of testimony, and that these two (sic) days will be scheduled consecutively or, at a minimum, within the same week. The overwhelming majority of these cases are not so complex as to require that substantive evidence be added to the record after three full days of hearing. . .

*Complaint*, Attachment B, p. 7. Plaintiffs have properly averred that on information and belief Defendant Cassellius worked with Chief Legal Counsel Pust at the MDE to coordinate with the OAH to place these unlawful restrictions on the rights of children with disabilities to have a full and fair hearing under the Act.

16

Certainly, the direct action of Defendant Pust in her capacity as MDE Chief Legal Counsel and later in her capacity as Chief Judge of the Office of Administrative Hearing reflects direct knowledge, action and coordination on Defendant Pust's part in both capacities. As page 16 of Attachment B, the agenda wherein the limitation was discussed was a meeting that included all APA Judges at the OAH, including Defendant Pust. Without further discovery, more direct allegations of involvement by Defendants Cassellius and Pust, at this time, would be subject to the pleading limitations of due diligence and direct knowledge.

Defendants make efforts in their brief to pass the responsibility down to the Administrative Law Judge by characterizing the time limits as a discretionary function and that the best practices are not binding. The averments in the pleading reflect a opposite conclusion despite the ALJ's best efforts to assert that the inflexible time limits were within his statutory discretion to control the administrative proceedings pursuant to Minn. Stat. § 125A.091 and the fault of allegedly incompetent counsel. However, contrary to the case law cited by Defendants in support of their contention at p. 10, the ALJ in the instant case provided no basis for the exclusion of evidence on the basis of undue delay, waste of time or needless presentation of cumulative evidence. In fact, the final decision reflects that relevant, probative evidence was not admitted into the record which the ALJ laments in retrospect and that one of the fundamental issues under consideration, i.e., the motivation of the student, was buttressed only by testimony from the district witnesses, as none of the Plaintiffs were permitted to testify.

## II. STATE LAW CLAIMS ARE NOT BARRED BY 11TH AMENDMENT IMMUNITY.

Defendants cite to *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900 (1984) for the proposition that 11th amendment immunity cannot be defeated through claims involving state law against a state agency. Defendants' reliance on this decision is predicated on

17

the conclusion that the Defendants' immunity was not waived.  As Plaintiffs assert infra, 11th Amendment immunity under the IDEA was specifically waived by the Act and by state Defendants acceptance of the federal funding proceeds associated with Act.

## CONCLUSION

The Plaintiffs respectfully request that the Court deny MDE and OAH Defendants' Motion to Dismiss.

Respectfully submitted,

**KANE EDUCATION LAW, LLC.**

Dated: 30 January 2014

 /s/ Margaret O'Sullivan Kane
Margaret O'Sullivan Kane /ID # 220243
Attorney for Plaintiffs
1032 Grand Avenue
Suite 202
Saint Paul, Minnesota 55105
651/222-8611